**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

MASCHMEYER CONCRETE COMPANY OF FLORIDA,

Plaintiff,

v. Case No. 6:15-cv-912-Orl-37KRS

AMERICAN SOUTHERN INSURANCE COMPANY,

Defendant.

---

## ORDER

This cause is before the Court on the following:

1. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 95), filed March 4, 2016;
2. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 110), filed March 31, 2016;
3. Defendant's Reply in Support of Motion for Summary Judgment (Doc. 114), filed April 18, 2016;
4. Plaintiff's Amended Dispositive Motion for Summary Judgment as to the Issue of Whether There was One Continuing Contract Between Conpilog and City of Orlando and Whether Section 255.05 Payment Bond Applies to Plaintiff's Claim (Doc. 97), filed March 8, 2016;
5. Defendant's Response to Plaintiff's Amended Motion for Summary Judgment (Doc. 113), filed April 6, 2016; and

6. Plaintiff's Reply to Defendant's Response to Plaintiff's Amended Motion for Summary Judgment (Doc. 115), filed April 21, 2016.

## BACKGROUND

Pursuant to Florida's Bond Statute, § 255.05 ("**Bond Statute**"), this action was brought by a Florida "materialman"[1]—Maschmeyer Concrete Company of Florida ("**Plaintiff**")—to recover under "Public Construction Bond" number 60124 (Doc. 31-4, pp. 4–6 ("**PC Bond**"))—which Defendant American Southern Insurance Company ("**Defendant**") issued to construction contractor Conpilog International Company ("**Conpilog**").[2] (*See* Docs. 31, 53.) Discovery has concluded, and the matter is set for a bench trial in the August 2016 trial term. (*See* Doc. 32.) Currently pending before the Court are the parties' cross-motions for summary judgment ("**Cross-Motions**"). (*See* Doc. 95 ("**Defendant's Motion**"); Doc. 97 ("**Plaintiff's Motion**"); *see also* Docs. 110, 113–15.) After a hearing concerning the Cross-Motions (Doc. 124 ("**Hearing**")), and based on careful consideration of the parties' arguments, the record evidence, and sparse legal authority, the Court finds that Defendant's Motion is due to be denied and Plaintiff's Motion is due to be granted.

## LEGAL STANDARDS

Summary judgment is appropriate where "the movant shows that there is no

[1] A materialman is "any person who furnishes materials under contract to the owner, contractor, subcontractor, or sub-subcontractor on the site of the improvement or for direct delivery to the site of the improvement . . . and who performs no labor in the installation thereof." Fla. Stat. § 713.01(20) (2015).

[2] The requirements for diversity jurisdiction—*see* 28 U.S.C. § 1332(a)(1)—are met in this action because: (a) Defendant is a Kansas corporation with its principal place of business in Atlanta, Georgia; (b) Plaintiff is a Florida corporation, with its principal place of business in Lake Park, Florida; and (c) the amount in controversy exceeds $75,000.00. (*See* Docs. 1, 2, 4, 31.)

genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a movant carries its burden by showing that "an adverse party cannot produce admissible evidence" to support a material fact (Rule 56(c)(1)(B)), or by "citing to particular parts of materials in the record" (Rule 56(c)(1)(A)), then the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine dispute as to the material facts. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25 (1986). The underlying substantive law determines which facts are material, and a dispute is "genuine" if the evidence concerning the "material facts" is such "that a reasonable jury could return a verdict" for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The substantive law at issue in this action is the current version of the Bond Statute, which provides in pertinent part:[3]

> (1) A person entering into a formal contract with the state or any county, city, or political subdivision thereof, or other public authority or private entity, for the construction of a public building, for the prosecution and completion of a public work, or for repairs upon a public building or public work [("**Public Work Contract**")] shall be required, before commencing the work or before recommencing the work after a default or abandonment, to execute and record in the public records of the county where the improvement is located, a payment and performance bond [("**Statutory Bond**")] with a surety insurer authorized to do business in this state as surety. . . .
>
> * * *
>
> (c) The [Statutory Bond] shall be conditioned upon the

[3] A prior version of the Bond Statute—which was in effect from July 1, 2007 through September 30, 2012 ("**Prior Version**")—did not address the enforceability of Statutory Bond provisions that limited or expanded the effective duration of the Statutory Bond; however, the Prior Version did render "unenforceable" any provisions in a Statutory Bond, "which restrict[ed] the classes of persons as defined in § 713.01 protected by the [Statutory Bond] or the venue of any proceeding relating to such [Statutory Bond]." *See* Fla. Stat. § 255.05 (2011).

> contractor's performance of the construction work in the time and manner prescribed in the [Public Work Contract] and promptly making payments to all persons defined in § 713.01 who furnish labor, services, or materials for the prosecution of the work provided for in the contract. A claimant may apply to the governmental entity having charge of the work for copies of the [Public Work Contract and Statutory Bond] and shall thereupon be furnished with a copy of the [Public Work Contract] and recorded [Statutory Bond]. **The claimant shall have a cause of action against the contractor and surety for the amount due him or her, including unpaid finance charges due under the claimant's contract**. Such action may not involve the public authority in any expense.
>
> (d) [A Statutory Bond is not required when] the work is done for the state and the contract is for $100,000 or less . . . .
>
> (e) Any provision in [a Statutory Bond] issued on or after **October 1, 2012**, furnished for [a Public Work Contract] as provided by this subsection which further restricts the classes of persons protected by the [Statutory Bond], which restricts the venue of any proceeding relating to such [Statutory Bond], **which limits or expands the effective duration of the [Statutory Bond]**, or which adds conditions precedent to the enforcement of a claim against the [Statutory Bond] beyond those provided in this section **is unenforceable** [(“**Duration Amendment**”)].

Fla. Stat. § 255.05 (2012) (emphasis added).

## DISCUSSION[4]

The genesis of this action occurred in the Fall of 2011, when the City of Orlando (“**City**”) issued “Invitation for Bid” number “IFB12-0012”, which was titled “CONCRETE REPAIR AND CONSTRUCTION” (“**IFB**”). (*See* Doc. 31-4, pp. 4–6; *see also* Doc. 95-2.) Conpilog submitted the lowest bid—**$616,952.00** bid (“**Bid**”)—which the City approved on

[4] The parties dispute the others’ version of the facts for purposes of summary judgment. (*Compare* Doc. 97, pp. 4–6 *and* Doc. 110, pp. 3–7, *with* Doc. 95, pp. 2–11 *and* Doc. 113, pp. 1–8.) Disregarding their many squabbles over minutia, the Court recites only the material facts that are not subject to any *reasonable* dispute.

November 14, 2011 and then accepted through correspondence to Conpilog a few days later ("**Acceptance Letter**"):

**Subject:** **Term Contract No. IFB12-0012**
**Concrete Repair and Construction**

The subject contract is the City of Orlando's acceptance of your offer in response to IFB12-0012, Concrete Repair and Construction, and is subject to all terms and conditions therein, as well as any and all addenda to that solicitation.

This contract is a one-year contract, effective December 1, 2011, and will remain in effect through November 30, 2012. The estimated annual amount for this period is $616,952.00.

This contract may be renewed upon mutual agreement as provided in the solicitation. Any amendments to this contract must be in writing and signed by both parties. Such amendment(s) must be signed by the Director of Purchasing and Materials Management, or designee, to be valid, binding, and enforceable.

All invoices must reference the subject Contract Number. Invoices must be submitted to the address below:

Accounts Payable
City of Orlando
4th Floor, City Hall
PO Box 4990
Orlando, FL 32802-4990

Please remember that only those goods/services specifically listed in this contract can be invoiced against this contract, and the description and unit prices on each invoice must match the description and unit pricing in the subject contract. Invoices not meeting these requirements are considered Improper Invoices and will be returned.

Sincerely,

David Billingsley, CPSM, C.P.M.
Senior Purchasing Agent

(*See* Doc. 95-3, pp. 1–3). Based on the Acceptance Letter and IFB (the "**Agreement**"), Conpilog and the City ("**Contracting Parties**") commenced performance;[5] and, on **July 2, 2012**, the City sent correspondence to Conpilog to renew the Agreement

[5] Prior to October 1, 2012, Conpilog obtained a Statutory Bond for the Agreement from a different surety. (Doc. 95-3, pp. 4–6.)

("**Renewal Letter**") as follows:

**Subject:** **Term Contract No. IFB12-0012 / Concrete Repair and Construction Contract Amendment No. One**

Dear Mr. Pinzon:

The subject Contract will expire on November 30, 2012.

In accordance with the terms and conditions of subject Contract, the Contract may, by mutual assent of the parties, be renewed for an additional twelve (12) month period.

The City would like to exercise the right for the renewal of this Contract for an additional year effective December 1, 2012, at the existing pricing, terms and conditions.

Please indicate your approval of this offer by having an officer of your firm execute the acceptance portion below and return the original of this letter to me at the address noted below by **July 24, 2012**.

Please ensure that the required Performance Bond and Insurance is renewed in a timely manner. Our records indicate the Performance Bond currently on file expires November 30, 2012; please submit a new registered bond no later than November 1, 2012. Your insurance is currently up-to-date, with Workers Compensation expiring first on April 1, 2013. Please ensure that a new Insurance Certificate is submitted prior to that date.

Upon execution below by your firm's authorized representative, this Contract will be your official notice that the Contract has been extended for one (1) year and no additional documentation will be required.

Thank you for your immediate attention to this matter.

Sincerely,

Donna G. Villinis, CPPB
Purchasing Agent III

**ACCEPTANCE**

By: ______________________
Official Signature

President
Title

July 23/2012.

(*See id*. at 10.)

On **November 14, 2012**, Defendant issued the PC Bond to Conpilog. (*See id*. at 14–15; *see also* Doc. 31-4, pp. 4–6.) Consistent with the requirements of the Bond

Statute, the first page of the PC Bond ("**Facer Page**") set forth: (1) the names, addresses, and phone numbers for Conpilog, Defendant, and the City; (2) the "contract number assigned" by the City for the Agreement—"**IFB12 0012"**; (3) the "bond number assigned" by Defendant—**60124**; and (4) the following "description of the project":

| | |
|---|---|
| Project Name: | Concrete repair & Construction |
| Project Scope: | Concrete repair and construction – various locations |
| Location: | Various locations |
| Legal Description: | same as above |

(*See* Doc. 31-4, p. 4.)[6] The Facer Page further provided that the "Bond Amount" was $154,238.00 ("**Face Amount**") and the "amount" of the Agreement was $616,952.00. (*Id.*)

On the second page of the PC Bond, Defendant incorporated the "provisions and limitations" of the Bond Statute by reference,[7] and it also incorporated "the contract dated December 1, 2011, between [Conpilog and the City] for construction of Term Contract

---

[6] The front page of every Statutory Bond must include the following information on its front page:

> 1. The name, principal business address, and phone number of the contractor, the surety, the owner of the property being improved, and, if different from the owner, the contracting public entity.
>
> 2. The contract number assigned by the contracting public entity.
>
> 3. The bond number assigned by the surety.
>
> 4. A description of the project sufficient to identify it, such as a legal description or the street address of the property being improved, and a general description of the improvement.

Fla. Stat. § 255.05(1)(a) (2012).

[7] Similarly, the Facer Page advised that the PC Bond was "amended such that all provisions and limitations, including conditions, notice and time limitations" of the Bond Statute were incorporated by reference, and any provision of the PC Bond that "conflicts with or purports to grant broader coverage or more expanded coverage in excess of the minimum requirements of the [Bond State] shall be deleted herefrom." (Doc. 31-4, p. 4.)

IFB12-0012; Concrete Repair and Construction":

> *PROVIDED, however, the term of this bond shall be for a period of one year dated 12/01/12 – 11/30/13 regardless of contract language to the contrary [("**Bond Term**")]. This bond may be renewed at the option of [Defendant], but non-renewal will not be a condition of default under the contract.
>
> PROVIDED, furthermore regardless of the number of years this bond may be renewed, the liability of [Defendant] shall not be cumulative, and aggregate liability of [Defendant] for all claims, suits or action under this bond shall not exceed the [Face Amount].

(*Id*. at 5 ("Any changes in or under [the Agreement] documents and compliance or noncompliance with any formalities connected with [the Agreement] or the changes does not affect [Defendant's] obligation under this bond.*").)

On **June 28, 2013**, the City sent correspondence to Conpilog again advising that the City "would like to exercise the right for renewal" of the Agreement "for an additional year effective December 1, 2013, at the existing pricing, terms and conditions" ("**Second Renewal Letter**"). (Doc. 95-3, p. 17.) Conpilog accepted the Second Renewal Letter and advised that "[i]n the appropriated [sic] time we will send the Performance and Payment Bond." (*See id*. at 28.) A few months later, the Contracting Parties agreed to amend the payment provisions of the Agreement, and they memorialized the amendments in a writing dated **October 22, 2013**. (*See* Doc. 95-4, pp. 1–6 ("**2013 Amendment**").) The following September, the Contracting Parties again agreed to amend and extend the Agreement as follows ("**2014 Amendment**"):

**AMENDMENT NUMBER THREE TO**
**AGREEMENT DATED OCTOBER 20, 2011**
**BETWEEN CITY OF ORLANDO AND**
**CONPILOG CONSTRUCTION DIVISION**

> **THIS AMENDMENT TO AGREEMENT** is made and entered into this 5th day of September 2014, by and between the City of Orlando, a municipal corporation organized and existing under the laws of the State of Florida, hereinafter referred to as the "City" and "Conpilog Construction Division", hereinafter referred to as the "Contractor".
>
> **WHEREAS**, the City and the Contractor entered into an Agreement ("the Agreement") under the date of October 20, 2011, whereby the latter would perform certain services with respect to the Concrete Repair and Construction; and
>
> **WHEREAS,** the parties amended the Agreement by date of July 23, 2012, and July 8, 2013; and
>
> **WHEREAS,** the City and the Contractor desire to amend the scope of services of said Agreement to reflect a Daily Payment Rate based on contract usage rather than an automatic Quarterly Payment Rate;
>
> **NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, the parties agree as follows:
>
> **I. <u>TERM OF AGREEMENT</u>**
>
> The current Term of the Agreement, September 27, 2013, through November 30, 2014, is hereby extended through November 30, 2015.
>
> **II. <u>SCOPE</u>**
>
> The Scope of Services and Compensation provisions of the Agreement are hereby amended to add a Daily Payment Rate for contract usage in lieu of an automatic Quarterly Payment Rate and as set forth in Exhibit "A" attached hereto and incorporated herein by reference. The Contractor shall continue to provide Concrete Repair and Construction.
>
> In all other respects, and except as specifically modified and amended herein and in Amendment ~~Three~~ One dated July 23, 2012, and Amendment Two dated July 8, 2013, the Agreement dated October 20, 2011, shall continue in full force and effect as written and the parties hereto agree to be bound thereby.

(*See* Doc. 95-5, pp. 1–2.)

Between **April 29, 2014** and **January 30, 2015** ("**Supply Dates**"), Plaintiff provided construction materials to Conpilog ("**Materials**"), which were then used to perform concrete repair and construction work required under the Agreement. When Conpilog failed to pay Plaintiff for the Materials ("**Conpilog's Debt**"),[8] Plaintiff demanded payment

[8] On **April 10, 2015**, Conpilog filed a voluntary bankruptcy petition under Chapter 7—*In re Conpilog International Company*, Case No. 6:15-bk-03162-KSJ.

from Defendant and then initiated this action when Defendant refused to pay Plaintiff for the Materials under PC Bond. (*See* Docs. 2, 31.) In several Affirmative Defenses, Defendant asserted that Plaintiff's claim under the Bond Statute fails as a matter of law because the Supply Dates were *after* the Bond Term ("**Bond Term Defense**").[9] (*See* Doc. 53, pp. 1, 2, 6; *see also* Docs. 95, 113, 114.) Plaintiff countered that the Bond Term is unenforceable under the Duration Amendment to the Bond Statute ("**Counter-Argument**"). (*See* Docs. 31, 97, 110, 115.) Without citation to pertinent controlling case law, the parties each contend that the Court should enter summary judgment in their favor on the Bond Term Defense. (*See* Docs. 95, 97.)

Like the parties, the Court has not found a decision from any court applying the Duration Amendment in any context—let alone under circumstances similar to those presented here. Thus, the Court must resolve the parties' dispute without the benefit of controlling or persuasive authority on point.[10] Accordingly, the Court first examines the crucial language of the Bond Statute itself, which renders *unenforceable* any provision in

---

[9] For instance, in its Answer Defendant alleges the following affirmative defenses: (1) the PC Bond "applied only to the work performed during the twelve-month term from December 1, 2012, through November 30, 2013" (Doc. 53, p. 1 ("**2nd Defense**")); (2) Defendant owes nothing under the PC Bond for materials that were not delivered or "used for the prosecution of the work provided for in any contract for which the Bond applied . . . ." (*see id*. at 2 ("**3rd Defense**")); and (3) the "defense" of "'cardinal change' or material alteration . . . of the bonded obligation" (*id*. at 6 ("**20th Defense**")). For convenience, the Court refers to these related affirmative defenses as the "**Bond Term Defense**."

[10] Indeed, only a small handful of decisions even cite to the current version of the Bond Statute. *See Fire Stop Sys., Inc. v. Liberty Mutual Ins. Co*., No. 2:15-cv-449, 2015 WL 6750788, at *1 (M.D. Fla. Nov. 5, 2015) (transferring venue); *Advance Indus. Coating, LLC v. Westfield Ins. Co.*, No. 2:15-cv-141, 2015 WL 1822510, at *1 (M.D. Fla. Apr. 16, 2015) (denying demand for arbitration); *see also East Coast Metal Decks, Inc. v. Boran Craig Barber Engel Const. Co.*, 114 So. 3d 311 (Fla. 2d DCA 2013) (addressing venue).

a Statutory Bond issued after October 1, 2012, "which limits or expands the *effective duration* of the [Statutory Bond]."[11] *See* Fla. Stat. § 255.05(e) (emphasis added). The only reasonable interpretation of "effective duration" of the Statutory Bond is a bond duration that corresponds to the full term of the Public Work Contract identified on the face of the Statutory Bond or incorporated by reference in the Statutory Bond.[12]

Here, the Agreement is both identified on the face of the PC Bond and explicitly incorporated by reference; thus, the Bond Term is unenforceable if it limits or expands the term of the Agreement. According to Plaintiff, the term of the Agreement is a continuous period that started in the Fall of 2011 and continued through the Supply Dates up to sixty months in accordance with Renewal Letter, the Second Renewal Letter, the 2013 Amendment, and the 2014 Amendment ("**Continuous Term**"). (*See* Doc. 97.) The Court agrees.

Again, the Court turns first to the crucial language—this time, the language of the Agreement itself, which reads:

> The term of the contract resulting from this solicitation, shall be for an initial twelve (12) month period. The contract may, by mutual assent of the parties, be extended for four (4) additional twelve (12) month periods or portions thereof, up to a cumulative total of sixty (60) months.

(Doc. 95-2, p. 79.) The Acceptance Letter further provides that the Agreement is for an initial twelve-month period that may be renewed in accordance with the terms of the IFB. (*See* Doc. 95-3, p. 3 ("This contract is a one-year contract, effective December 1, 2011,

---

[11] There is no dispute that Defendant issued the PC Bond to Conpilog on **November 14, 2012**. (*See* Doc. 31-4, pp. 4–6.)

[12] The Court declines to ignore this "literal" meaning urged to by Defendant. (*See* Doc. 95, pp. 17–19 (arguing that the "legislative history" is "in conflict with a literal reading" of the Bond Statute).)

and will remain in effect through November 30, 2012. . . . This contract may be renewed upon mutual agreement as provided in the solicitation.”).) Absent context, this language might appear somewhat inconsistent; however, the Court does not view contractual language in a vacuum.

The crucial context in this action is that the Agreement concerned a public works project, which is subject to competitive bidding requirements. In Florida, when a “construction project is projected to cost more than $200,000”, municipalities must solicit bids through publicly advertised IFBs, and they generally must accept the lowest bid. *See* Fla. Stat. § 255.0525(2); *see also* Fla. Stat. § 255.101 (encouraging municipalities to “competitively award public construction projects exceeding $100,000”); Fla. Stat. §§ 255.103, 287.055(g) (defining a “continuing contract” for purposes of competitive bidding for professional and construction management services). There is no dispute that the City satisfied such bidding requirements for the Agreement—but only one time—in the Fall of 2011. This fact eliminates any ambiguity created by the Acceptance Letter and confirms the plain intent of the Contracting Parties to enter into a single contract with a “cumulative” term of up to sixty months. (*See* Doc. 95-2, p. 79.)[13] As such, Defendant’s Bond Term Defense fails.

In its reply in support of Defendant’s Motion and in its response to Plaintiff’s Motion, Defendant argues that even if the Court applies the Continuous Term theory, it must enter summary judgment in favor of Defendant on the Bond Term Defense because doing

[13] To accept Defendant’s contrary theory that “the agreements for each term were new and independent contracts” (*see* Doc. 95, p. 12), the Court would have to assume that the City disregarded its statutory bidding obligations. Rather than do so, the Court applies the Continuous Term theory—which is fatal to the Bond Term Defense.

otherwise would violate Defendant's rights under the Florida Constitution. (*See* Doc. 113, pp. 20–21; Doc. 114, p. 9 ("Plaintiff's argument would result in a textbook example of an unconstitutional impairment of contract.").) This argument fails because: (1) the Duration Amendment to the Bond Statute was already enacted—and presumably known to Defendant—when it issued the PC Bond; and (2) prior to its issuance of the PC Bond, Defendant had no "vested" rights concerning the Agreement. (*See supra* n.7 (noting provisions of PC Bond that incorporated by reference the Bond Statue).) Thus, rejection of the Bond Term Defense in this action is not an unconstitutional retroactive application of the Duration Amendment.

Having rejected the Bond Term Defense, the Court finds that partial summary judgment is due to be entered in favor of Plaintiff on the Bond Term Defense. Absent agreement of the parties concerning damages—which does not yet appear in the record—the bench trial will proceed with respect to damages only.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 95) is **DENIED**.

(2) Plaintiff's Amended Dispositive Motion for Summary Judgment as to the Issue of Whether There was One Continuing Contract Between Conpilog and City of Orlando and Whether Section 255.05 Payment Bond Applies to Plaintiff's Claim (Doc. 97) is **GRANTED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 12, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record